Bell v. Morrison, 1 Pet. [26 U. S.] 351; Ayers v. Richards, 12 Ill. 146; Dickerson v. Sutton, 40 Ill. 403; In re Anderson [Case No. 351].

[That the evidence was not sufficiently positive as to the time of the promise or its extent, or that the bankrupt admitted understandingly. before his bankruptcy, the receipt of the goods, and that nothing had been paid; that the evidence is vague and contradictory as to the new promise, while it sufficiently appears that the bankrupt declined and resisted payment successfully of any part of the claim up to the time of his bankruptcy. Wetzell v. Bussard, 11 Wheat. [24 U. S.] 315; Bell v. Morrison, 1 Pet. [26 U. S.] 360; Ayers v. Richards, 12 Ill. 148; Dickerson v. Sutton, 40 Ill. 404; In re Anderson [supra].[2]

McDaid, Wilson & Picher, for creditor, cited, against the plea, the opinion of Judge Blatchford in Re Ray [Case No. 11,589]; In re Perry [Id. 10,998]; and also argued that the running of the statute was arrested by bankrupt's acknowledgment, and that a suit was brought by the creditor, the result of which is not shown by the evidence. That the acknowledgment was sufficient, counsel cited Wooters v. King, 54 Ill. 343.

NOTE. The statute of limitations ceases to run against the creditor of a bankrupt at the commencement of the proceedings in bankruptcy, and, if not barred at that time, his claim may be proved afterwards, though at the time of proof it would be otherwise barred. In re Eldridge [Case No. 4,331]. A debt barred by the statute of limitations of the state in which the proceedings in bankruptcy are pending is not provable against the estate of the bankrupt, and cannot be reckoned in computing the number necessary to join in an involuntary petition. In re Noeson [Id. 10,288].

[2] [From 11 N. B. R. 94.]

## Case No. 11,636.

### In re REED.

[26 Int. Rev. Rec. 35.]

Circuit Court, D. Massachusetts. June 12, 1879.

NAVY—COURT-MARTIAL — JURISDICTION — PAYMASTER'S CLERK — REVISING SENTENCE—DETACHED MEMBER OF COURT.

1. The clerk of a paymaster in the navy is a person in the naval service of the United States, and subject to the jurisdiction of a naval court-martial for offences against the articles for the government of the navy of the United States.

2. The convening officer of a naval court-martial has authority to send back to the court, the record of the proceedings of the court in any trial, with the finding and sentence, for the reconsideration of such court as to the revision of the sentence.

3. A naval general court-martial was convened for the trial of A. B. and such others as should be brought before it. After the sentence of A. B. was agreed upon, the court sent the record of the trial, with its findings and sentence, to the convening officer for approval, and proceeded with other trials,—lasting three days, —at the end of which the record, etc., in the case of A. B., which had been sent back for a revision of the sentence, was taken up, and a revised sentence agreed upon, which was duly approved by the convening officer. Held, that the intermission of three days in the trial of A. B., the court being occupied with the other trials, was no violation of article 45 of the articles for the government of the navy.

4. A naval general court-martial was held for the trial of A. B. and of such others as should be brought before it. After the sentence of A. B. was agreed on and recorded, and the record, etc., sent to the convening officer for approval, one of the members was detached and another officer took his place on the court, which proceeded with other trials. At the conclusion of these trials, the record in the case of A. B. having come back for revision of sentence, the new member left the court, and the former member resumed his seat, and the court then gave a revised sentence, which was duly approved by the convening officer. Held, that this did not make the sentence of A. B. illegal.

Alvin R. Reed, the petitioner, on the 14th April, 1879, filed his petition, duly signed and sworn to, in the circuit court, addressed to Judge LOWELL, circuit judge, in which he complains that he is unlawfully imprisoned on the United States ship Wabash, now in the harbor of Boston, and at the navy-yard in said Boston, by Captain S. L. Breese, the officer in command of the said Wabash, and avers that the said S. L. Breese claims to restrain him of his liberty, as he is informed and believes, by virtue of a certain paper or sentence purporting to be a sentence made by a naval court-martial, or by virtue of an order or warrant issued by the secretary of the navy of the United States, based on said sentence, which sentence, as he is informed and believes, is null and void, and without authority in law, and in violation of his constitutional rights as a citizen of the United States, as will more fully appear from the record of the proceedings of the said court-martial, a copy of which, including a copy of said pretended sentence, is

annexed to the petition. Wherefore he prays that a writ of habeas corpus may issue and for other relief, that the complainant may obtain his liberty. April 17, 1879, Captain Breese appeared in court in response to the writ, and produced the body of said Reed, and, as to the cause of the taking and detaining said Reed, answered that he held him under an order of the commandant of the navy-yard at said Boston, the said Reed being under the sentence of a naval general court-martial.

At the hearing, which, in the absence of Judge LOWELL on the circuit, was before Judge NELSON, of the district court, it appeared—and there was no dispute as to the facts—that June 26, 1878, Rear-Admiral Edward F. Nichols, commanding the United States naval force on the South Atlantic station, by virtue of authority vested in him by section 1624, c. 10, art. 38, of the Revised Statutes of the United States, duly ordered a naval general court-martial to convene on board the United States ship Essex, at 10 o'clock a. m. on Monday, July 1, 1878, or as soon thereafter as practicable, for the trial of Alvin R. Reed, paymaster's clerk, United States navy, and such other persons as may legally be brought before it. In the order he named seven officers to constitute the court, five of whom were empowered to act, and stated further that "no other officers than those detailed can be assembled without manifest injury to the service." The seven officers consisted of a commander, five lieutenants, and one passed assistant paymaster. Captain Robert L. Meade, of the United States marine corps, was detailed as judge-advocate.

The court duly assembled at the time and place appointed. The accused was brought before the court, and being asked, replied that he had been furnished with a copy of the charges and specifications preferred against him, and that he had no exception or cause of challenge against the court or any member thereof; and, thereupon, the judge-advocate and the members of the court were duly sworn, and, at the request of the accused, counsel that he named was assigned him. The charges and specifications were then read aloud in the presence and hearing of the accused. The court was then closed, and proceeded to consider the charges and specifications; and certain alleged errors therein were pointed out by the judge-advocate, which required the correction of the convening authority. The court after discussion decided that they should be sent back for correction, and it was then opened, and the accused was notified of its action, and an adjournment was had until the following day.

The court met July 2d, according to adjournment. The judge-advocate handed to the court amended charges and specifications received from the convening authority. The court was cleared to inspect them, and they were found to be legally and specifically drawn. The court was then re-opened and the accused was asked by the judge-advocate if he had received a copy of the amended charges and specifications, and whether he was ready for trial, to which he replied that he had received them that morning, and respectfully asked until 10 o'clock the next morning to prepare himself for trial, which request was granted, and the court adjourned. July 3d, the court met pursuant to the adjournment. The judge-advocate called upon the accused to listen to the charges and specifications which were then read aloud in his presence and hearing, and being called upon to plead thereto, he pleaded in bar of trial: First. That all that he did was done by him in a clerical capacity, and while performing the duty assigned him by his superior and appointing officer, the pay inspector. Second. That the charges, etc., were based upon the action of a court of inquiry, and that he was not subject to trial except upon charges, etc., preferred by his appointing officer, the pay inspector. Third. That the offences alleged are not cognizable by this court, but are offences against the general law of the land and are exclusively cognizable by the ordinary courts of criminal jurisdiction, on proceedings instituted by his appointing officer, the pay inspector. Fourth. That certain witnesses named are necessary to his defence, and that they are beyond the reach or control of the court, and that no list of witnesses who are to appear against him has been furnished him. Fifth. That the amended charges, etc., contain a charge not included in the original charges, etc. The court was cleared for deliberation upon said pleas. It was decided that each and all were invalid, and that the trial must proceed, and the court was opened and its decision announced to the accused.

The accused then moved the court in writing, subscribed and sworn to by him, that his trial be postponed because of the absence of certain material witnesses for his defence, until such time as the said witnesses may be summoned, or the navy department be heard from on the subject. In this motion two witnesses were named, the pay inspector before referred to, and the late fleet clerk, as "the most important witnesses by whom I expect to disprove the charges. They are now in the United States and quite beyond the power or control of this court, and I make this application not to defeat the ends of justice, but to secure to myself that justice to which every accused person is entitled before the law, civil or military, the means of offering proof of innocence, which the absence of these witnesses deprives me of, and which absence arises through no fault of mine, but if any fault thereby exists it must be attributed to the convening authority." "Another important witness towards disproving a part of the charges is W. D. Evans, a merchant of Montevideo, Uruguay,

without whom I am deprived of most important testimony." The court was cleared, the motion discussed and forwarded to the convening authority, endorsed as a reasonable request. The court was then re-opened, and adjourned to "the day after tomorrow, July 5th," having decided that the fourth day of July is a legal holiday. Admiral Nichols, on the 3d of July, acknowledged to the president of the court the receipt of the request of the accused for the postponement of his trial, stated that the subject-matter was of too grave importance to be hastily decided, requested the president to inform Mr. Reed that his request was under consideration, and directed the court to adjourn until the usual hour to-morrow.

The court met on the 4th July, but there being no decision by the convening authority upon the request of the accused for postponement of the trial, adjourned to July 5th, when it met again, and the decision of Admiral Nichols, refusing the postponement, was received and read aloud in the presence and hearing of the accused. The reasons assigned for refusing the postponement were because the motion did not set forth sufficiently under the rules and regulations how the testimony was material; and further, so far as the evidence of the pay inspector was concerned, the report of the court of inquiry, upon which these charges against the accused were founded, showed that the pay inspector was the chief delinquent, and if he was called as a witness he could not give his testimony without criminating himself, and therefore could not be compelled to testify; and, besides, being a party in interest, he should not be permitted to testify. As to the testimony of the fleet clerk, the report of the court of inquiry did not implicate him to any extent, and therefore his testimony could not be material; and as to the testimony of the Montevideo merchant, he had no authority to compel his attendance.

The trial then proceeded on each week day until July 16th, when, the testimony being finished, the accused read his defence, and the judge-advocate submitted the case without argument. During this period one of the members, a lieutenant, fell sick and was detached from the court. There were two charges against the accused. The first charge was "violation of the fourteenth article of articles for the government of the United States navy" (Rev. St. U. S. p. 278). To this charge there were four specifications. The second charge, to which there was but one specification, was "paying money to members of the crew of the United States flagship Hartford, without authority from his commanding officer, and in violation of naval regulations." The court was cleared for deliberation, and after full consideration found two of the specifications of the first charge proved in full, and the other two proved in part, and that the accused was guilty of the charge. As to the second charge, the court found the specification proved and the accused guilty of the charge. The court thereupon proceeded to sentence the accused to a "fine of $500 and imprisonment for one year in any prison or penitentiary designated by the honorable secretary of the navy. If fine be unpaid at expiration of his imprisonment, to remain in such prison or penitentiary until such fine be paid to the government. At the expiration of his confinement to be dishonorably discharged the service of the United States. To lose all pay except $50 per month during said confinement." The court then adjourned until July 17th, when it met, all the members (six) being present. The record of the previous day was read and approved, and the members of the court signed the record of the proceedings, finding, and sentence, which was then transmitted to the convening authority.

The record of the general court-martial then proceeds to state: "The president of the court here presented an order of the convoking authority detaching Passed Assistant Paymaster H. T. Stancliff, U. S. Navy, from further duty on the court, which was read aloud, and P. A. Paymaster H. T. Stancliff withdrew." Another officer, Ensign S. C. Lemley, detailed for the duty, took his seat as a member of the general court-martial. The order of Admiral Nichols was as follows: "U. S. Flagship Hartford, Rio de Janeiro, Brazil, 17 July, 1878. Passed Assistant Paymaster H. T. Stancliff, U. S. N., U. S. Steamer Essex, Rio de Janeiro—Sir: Upon the completion of the trial of Paymaster's Clerk A. R. Reed, U. S. N., you will regard yourself as detached from duty as a member of the court-martial convened on board the U. S. steamer Essex. Very respectfully, E. T. Nichols, Rear-Admiral U. S. N., Comdg. U. S. Naval Force on S. A. Station."

The court then proceeded with the trial of Philip Krug, second class boy, United States navy, and afterwards with the trial of Philip Kincaid, ship's cook, United States navy, with which two trials the court was occupied the remainder of July 17th, the whole of July 18th and 19th, and part of July 20th. The record of the court-martial then goes on, under date of 3 o'clock p. m., Saturday, July 20, 1878, as follows: "The court having finished the trial of Philip Kincaid, ship's cook, U. S. Navy, proceeded to revise the case of Alvin R. Reed, paymaster's clerk, U. S. Navy. Ensign S. C. Lemley, U. S. Navy, not being a member of the court which tried A. R. Reed, withdrew temporarily from the court, and Passed Assistant Paymaster H. T. Stancliff, U. S. Navy, who was a member of said court, was called into court and took his seat. Whereupon the court was cleared, and the president produced and read aloud a letter from Rear-Admiral E. T. Nichols, U. S. Navy, commanding U. S. naval force on South Atlantic station, sending the record in the

case of Alvin R. Reed, paymaster's clerk, U. S. Navy, back to the court for revision of sentence."

The letter of Rear-Admiral Nichols was as follows:

"U. S. Flagship Hartford, Rio de Janeiro, Brazil, 19th July, 1878. Commander W. Schley, U. S. N., President Naval General Court-martial, U. S. Steamer Essex—Sir: I have carefully examined the record of the court in the case of Paymaster's Clerk Alvin R. Reed, U. S. N., and am of the opinion that the finding is in accordance with the evidence, but regret to be compelled to differ with the court as to the adequacy of the sentence. The court is respectfully referred to section 1624, c. 10, art. 51, tit. 15, Rev. St., for its duty in passing sentence. In the case under consideration, the sentence awarded can scarcely be called 'a punishment adequate to the nature of the offense.' The fine imposed upon Mr. Reed is actually paid by the United States, for the court grants to him fifty dollars per month of his pay while in confinement. The sentence also provides that in case the fine is not paid at the expiration of the term of imprisonment, such imprisonment shall continue until the fine is paid. The clause in regard to loss of pay is as follows: 'To lose all pay except fifty dollars per month during said confinement.' Now what is implied by 'said confinement?' I think its clear meaning to be the confinement imposed by the court, viz. one year and as much longer as he (Mr. Reed) chooses to decline paying the fine. It will thus be seen that the accused will continue to receive fifty dollars per month for an indefinite period. In this aspect of the case, the sentence can scarcely be considered as a punishment; indeed, it seems rather to be in the nature of a reward; but I cannot suppose that the court so intended, and I am compelled to return the case to give the court an opportunity of revision. If the court in awarding this lenient sentence did so on the ground that there were mitigating circumstances, or that the accused was from any other circumstances entitled to merciful consideration, it erred against the law. Those members who held such opinions had it in their power, under the above referred to law, to place their opinions on the record, and make their appeal for clemency to the revising authority after 'a punishment adequate to the nature of the offence' had been awarded. The court is also respectfully referred to the latter part of section 248, p. 47, of 'Orders, Regulations and Instructions for the Administration of Law and Justice' for information in regard to forfeiture of pay. The record is herewith returned for revision. Very respectfully, Ed. T. Nichols, Rear-Admiral U. S. N., Commanding U. S. Naval Force on S. A. Station."

The record then goes on to state that "the court then proceeded with the revision, and ordered the following sentence to be placed on the record in substitution for the former sentence, which is hereby revoked: 'That the said Alvin R. Reed, paymaster's clerk in the U. S. Navy, be imprisoned in such place as the honorable secretary of the navy may designate, for the term of two years; to lose all pay which may become due him during such confinement, except the sum of ten dollars per month, this loss amounting to one thousand nine hundred and sixty dollars; to be fined in the sum of five hundred dollars, which fine must be paid before or at end of term of confinement; to be detained in confinement without pay until such fine be paid, and at the expiration of term of confinement to be dishonorably discharged from the naval service of the United States.'" This last sentence was duly signed by the six members of the court (including Passed Assistant Paymaster Stancliff) and the judge-advocate, and to it was appended the following recommendation signed by five members of the court, but not signed by the president of the court or the judge-advocate: "We, the undersigned, members of the general court-martial for the trial of Paymaster's Clerk Alvin R. Reed, U. S. Navy, would respectfully recommend him to the clemency of the revising power, on the ground that he has a wife and young child at home, who, we believe, are entirely dependent upon him for support." The court then adjourned until Monday, July 22d, to enable the judge-advocate to write up the record, at which time it met pursuant to the adjournment, and the members "proceeded to sign this the record of its revised sentence." Passed Assistant Paymaster H. T. Stancliff here withdrew, and Ensign S. C. Lemley, United States navy, came into court and resumed his seat as a member. The record then states that "the court having finished all the business before it, then adjourned at 10:45 o'clock a. m., to await the decision of the revising power."

Under date of July 24, 1878, Admiral Nichols, in reviewing the proceedings of the court and in considering the recommendation to clemency by some members of the court, declined, for reasons given at some length, to mitigate the sentence of the court or to recommend its mitigation, and concluded the record in Reed's case as follows: "The proceedings, finding and sentence are approved, and Mr. Reed will be sent to the United States by the first favorable opportunity,"—which he signed.

It was in evidence at the hearing on the habeas corpus that Mr. Reed was sent from the South Atlantic to Portsmouth, N. H., in a government vessel, and was thence transferred to the Charlestown navy-yard by order of the secretary of the navy, and ordered to be confined temporarily on board the receiving ship Wabash, at that navy-yard, at the present time under the command of the re-

spondent, Captain Breese. There was also evidence showing that Reed was duly appointed paymaster's clerk, and was duly qualified and placed upon the muster rolls, and had served in that capacity.

Hon. Geo. S. Boutwell, counsel for the petitioner, contended that the sentence of Reed, under which he was imprisoned, was absolutely void; that the court-martial had only such authority as was expressly given courts-martial by statute, and that the law would intend nothing in their favor. Wise v. Withers, 3 Cranch [7 U. S.] 337; Ex parte Watkins, 3 Pet. [28 U. S.] 208; Brooks v. Adams, 11 Pick. 442. That the court finished its duty on the 17th July, when it made its findings and passed its first sentence, and sent its finding and sentence with the record to the convening officer. That the convening officer, under article 54 of the articles for the government of the navy, upon receipt of the record could remit or mitigate the sentence, but that he had no authority to send back the record for a revision of the sentence. That if he could lawfully do so in any case, he could not do so in this case, because the court that tried the petitioner had been dissolved by the withdrawal of Passed Assistant Paymaster Stancliff therefrom and the addition of Ensign Lemley thereto; but if this should not be held to dissolve the court, that its final action was void because the court had not, as required by article 45 of the articles for the government of the navy, sat from day to day, Sundays excepted, until sentence was given, but had done nothing in the case from July 17th to July 20th.

George P. Sanger, United States attorney, contended in behalf of the respondent, that the petitioner Reed was properly kept by the respondent as the sentence of the court-martial was valid; that the court-martial was properly convened and duly organized; that it had jurisdiction over the offences charged against the petitioner, because they were within article 14 of the articles for the government of the navy, and over the petitioner himself because he was, within the intent of that article 14, "a person in the naval service of the United States;" that it had been decided that a paymaster's clerk in the navy is a person in the naval service of the United States in the cases of U. S. v. Bogart [Case No. 14.616]; In re Bogart [Id. 1,596]. See, also, Thomas' Case [Id. 13.888], cited in The Thales [Id. 13,855]. That the proceedings of the court were in all respects regular and in due course of law; that the admiral had the legal authority to send back the records with the findings and sentence for revision: (1) Because this power was in him as the convening officer of the court-martial, by whose command the court was called into existence, by whose authority it continued to exist, and by whose order it was dissolved. Under the constitution the congress had authority to establish courts-

martial, and when the congress established courts-martial, it established them with such powers as they possessed at the time of the adoption of the constitution. One of these powers, according to the unbroken authority of text writers on martial law, was the right of the convening officer to send back the record, findings, and sentence to the court for revision. The question had been raised, how often he could do it in any one case? But his right to send the record, etc., back once for revision was universally conceded by all the text writers, and by the opinions of the attorneys general of the United States; and there was no controlling authority. Dyves v. Hoover, 20 How. [61 U. S.] 79; 4 Op. Atty. Gen. p. 19; 6 Op. Atty. Gen. p. 200; MacArthur, Cts. Mart. pp. 126, 136; Macomb, Cts. Mart. p. 32; Tytler, Mil. Law (by James) pp. 169, 388; Sim. Prac. p. 289; O'Brien, Mil. Law, pp. 245, 277; De Hart, Mil. Law, p. 203; Harw. Nav. Cts. Mart. p. 144; Regulations for the Administration of Law and Justice in the Navy, p. 49, §§ 262, 265. (2) The congress, in article 54 of the articles for the government of the navy, recognizes this revising power of the convening officer as an existing right on his part. It only limits his authority in certain matters in the revision. He may remit or mitigate, but not commute the sentence; but with this limitation his powers on the revision of its proceedings are as large as were the powers of the convening officer in the practice of courts-martial at the time of the adoption of the constitution of the United States. (3) By section 1547, Rev. St. U. S., the congress adopts and gives the force of law to orders, regulations, and instructions issued by the secretary of the navy, and the regulations of the navy are full of authority for the convening officer to send back the proceedings for revision. Navy Reg. p. 49, §§ 262, 265. There was no irregularity in calling back Mr. Stancliff. His duty on the court for the trial of Reed did not end until after the trial was completed; and that trial was not finished until final sentence had been imposed, and the proceedings approved. Nor were the provisions of article 45 disobeyed, as urged by the counsel for the petitioner. The court-martial was a "general" one, and it continued in session from day to day for the trials of Krug and Kincaid, from July 17th to July 20th.

After the hearing, the counsel for the petitioner stated to the court that he had heard of a recent opinion of the attorney general of the United States which might apply to this case, and asked the court to withhold its decision until he had obtained that opinion, and, if found applicable, would present it to the court; and his request was granted. May 20th, counsel for the petitioner presented to the court the opinion of the attorney general of the United States, dated May 15, 1878 [16 Op. Atty. Gen. 13], to the effect that civilian clerks of quartermasters in the army,

and superintendents of national cemeteries, are not amenable to the jurisdiction of courts-martial, and claimed that the principle of that opinion was decisive of this law, as sections 1376 and 1377 of the Revised Statutes of the United States, giving the personnel of the pay corps of the navy, do not mention clerks to paymasters—precisely as sections 1132 to 1139, establishing the quartermaster's department in the army, do not mention civilian clerks to quartermasters.

The United States attorney contended: That the opinion of the attorney general, without questioning its authority, did not apply to the present case. The opinion is that civilian clerks to quartermasters in the army are not subject to court-martial, because they are not a part of the armies of the United States, to which alone the articles of war apply, and that they do not form a part of the army, because they are not named in the statutes defining of what the army shall be composed. From this opinion it necessarily follows that if they had been mentioned in those statutes, with the other officers, they would be considered part of the army and would be subject to court-martial. Therefore, it is an opinion in favor of the proposition that the petitioner Reed was, and is, a person in the naval service of the United States, and subject to court-martial, because the evidence shows that he was duly appointed and qualified as paymaster's clerk and served as such, and the following statute provisions make them a part of the navy: Section 1386, p. 248, Rev. St. authorizes the appointment of clerks to paymasters in the navy, subject to the limitations named in section 1387. Section 1410 shows that they are appointed officers, not being commissioned officers, nor warrant nor petty officers. Section 1556 establishes their pay, and section 4695 gives them a pension for total disability. The navy regulations of 1865 (paragraph 5) classed paymaster's clerks as staff officers, and gave them assimilated rank with midshipmen. The navy regulations of 1870 (section 891) provide for the manner of appointment, which was followed precisely in this case.

NELSON, District Judge. This is a petition for a writ of habeas corpus to Captain S. L. Breese, in command of the United States ship Wabash, in Boston harbor, who holds the prisoner in custody under a sentence of a naval court-martial. It appears by the return of the writ, and the other evidence, that a naval general court-martial was convened on board the United States ship Essex, in the harbor of Rio Janeiro, on the first day of July, 1878, by order of Rear-Admiral Edward T. Nichols, commanding the naval forces of the United States on the South Atlantic station, for the trial of the prisoner, a paymaster's clerk of the navy, attached to and serving on board the flagship Hartford, upon charges and specifications preferred against

him for alleged violations of article 14 of the articles for the government of the navy. Rev. St. U. S. art. 14, § 1824. The prisoner was tried and found guilty of the offences charged against him, and was sentenced by the court to "a fine of five hundred dollars and imprisonment for one year in any prison or penitentiary designated by the honorable secretary of the navy; and if fine be unpaid at expiration of imprisonment, to remain in such prison or penitentiary until such fine be paid to the government; at the expiration of his confinement to be dishonorably discharged from the service of the United States; to lose all pay except fifty dollars per month during such confinement." The record of the proceedings having been made up and transmitted to Rear-Admiral Nichols, that officer refused to confirm the sentence, and returned the record to the court for revision of sentence, and at the same time, by a letter addressed to the court, called attention to section 1624, art. 51, of the Revised Statutes, which provides that "it shall be the duty of a court-martial in all cases of conviction to adjudge a punishment adequate to the nature of the offence," and suggested that the sentence imposed was not sufficiently severe to meet the requirements of that article. The court thereupon proceeded to revise the case, revoked the former sentence, and in substitution therefor sentenced the prisoner to "be imprisoned in such place as the honorable secretary of the navy may designate for the term of two years, to lose all pay which may become due him during such confinement, excepting the sum of ten dollars a month, this loss amounting to one thousand nine hundred and sixty dollars; to be fined in the sum of five hundred dollars, which sum must be paid before or at the end of term of confinement. Should such fine not be paid at end of term of confinement, to be detained in confinement without pay until such fine be paid, and at expiration of term of confinement to be dishonorably discharged from the service of the United States." The record was again forwarded to Rear-Admiral Nichols, and the new sentence was confirmed by him. The prisoner is now held in the custody of Captain Breese under this sentence.

The prisoner claims that the proceedings of the court-martial are void, and his imprisonment under its sentence illegal, for two reasons.

The first reason assigned is, that as paymaster's clerk he was not in the naval service of the United States, within the meaning of article 14 of the articles for the government of the navy (Rev. St. U. S. art. 14, § 1624), and therefore not liable to be tried by court-martial upon the charges preferred against him. This point has been determined adversely to the prisoner by the United States district court for the Eastern district of New York.—U. S. v. Bogart [Case No. 14,616].—and by the circuit court of the

United States for the Ninth circuit,—Bogart's Case [Id. 1,596]. Under the statutes providing for the organization of the navy, and the regulations for the government of the navy adopted by the secretary of the navy, paymasters' clerks form a part of the pay corps of the navy. They receive their appointment from the secretary of the navy or the commander of the vessel on which they serve. They are required to accept their appointment by letter, binding themselves to be subject to the laws and regulations for the government of the navy, and to the discipline of the vessel, and to serve until regularly discharged. Their compensation is fixed by the statutes relating to the navy, and is paid from the naval appropriations, and their names are entered upon the navy muster rolls and pay rolls. Their duties are performed on board vessels of war or at naval stations, and relate to the administration of the funds of the navy department. In case of disability they are entitled to pensions as naval officers. In all essential particulars they belong to, and form a part of, the navy of the country, and must be regarded as subject to its rules and regulations.

For these reasons, which are the same given for the decisions of the court in the cases above cited, the conclusion upon the first point is that the prisoner was in the naval service of the United States within the meaning of article 14, and was liable to be tried, convicted, and sentenced by a naval general court-martial. Rev. St. U. S. §§ 1376–1389, 1556, 4695.

The second reason assigned is that Rear-Admiral Nichols had no authority to send back the proceedings to the court-martial for a revision of sentence, and consequently the second sentence was illegal. It was said by Attorney-General Legare in 1842, in an opinion reported in 4 Op. Atty. Gen. 19, that, "in military courts-martial, the power of the commander by whom they have been convened, to direct them, in the event of disapproval, to revise their sentence and reconsider the proceedings, has never been doubted; and is rested solely upon the ground that the sentences of such courts are not to be put in execution until approved by that commander;" and he decided in that case that the president might order a naval court-martial to reconsider its judgment whenever, according to the statute, his previous sanction is necessary for the execution of the judgment. The same question was again under consideration by Attorney General Cushing in 1853, in the case of Captain Voorhees, and in an elaborate and exhaustive opinion, reported in 6 Op. Atty. Gen. 201, the learned attorney-general shows beyond all question that by the well-settled principles of the military law, it is within the power of the authority appointing a court-martial, both in the army and navy, before the court has actually been dissolved, to order the case back for revision of sentence.

In that opinion he says: "It is laid down as a thing not open to controversy, in all the books of military law, that the superior authority may order a court martial to reassemble to revise its proceedings and sentence;" and "the power of ordering a case back to court martial for revision, must be conceded as indubitably existing, both as to the army and the navy of the United States;" and his opinion is fully sustained by the numerous authorities upon military law which he cites. He shows that a revisal by court-martial is not a case of new trial at the instance of the government, and until the sentence of the court is approved or disapproved, the case still remains sub judice. He clearly proves that the general rules of the military law have been adopted in this country, and are applicable to the proceedings of courts-martial both in the army and navy. Indeed, it was conceded at the hearing by the learned counsel for the prisoner that the practice now complained of has prevailed both in the army and navy since the foundation of the government.

By the act of July 14, 1862, c. 164, § 5 ([12 Stat. 565]; Rev. St. U. S. § 1547), it is provided that "the orders, regulations, and instructions heretofore issued by the secretary of the navy be, and they are hereby, recognized as the regulations of the navy department, subject, however, to such alterations as the secretary of navy may adopt, with the approbation of the president of the United States." Under the authority of this act, certain "Orders, Regulations and Instructions for the Administration of Law and Justice in the United States Navy," were issued by the secretary of the navy in April, 1870, with the approval of the president, and have ever since been in force. They contain the following provisions:

"Sec. 261. No sentence of a general court-martial can be carried into execution until after the whole of the proceedings have been laid before the officer who appointed the court, or, according to the circumstances of the case, shall have been submitted, through the secretary of the navy, to the president of the United States for his confirmation and orders."

"Sec. 262. The authority who ordered the court is competent to direct it to reconsider its proceedings and sentence, for the purpose of correcting any mistake which may have been committed."

"Sec. 263. It is not in the power of the revising authority to compel a court to change its sentence, when, upon being recommended by him, they have refused to modify it, nor directly or indirectly to enlarge the measure of punishment imposed by sentence of court-martial."

"Sec. 264. The proceedings must be sent back for revision before the court shall have been dissolved."

The fifty-third article for the government of the navy is as follows: "Art. 53. No sen-

tence of a court-martial, extending to the loss of life, or to the dismissal of a commissioned or warrant officer, shall be carried into execution until confirmed by the president. All other sentences of a general court-martial may be carried into execution on confirmation of the commander of the fleet, or officer ordering the court."

A paymaster's clerk is neither a commissioned nor a warrant officer, but holds his position by appointment. The first sentence 'was disapproved by the commander of the fleet, and the proceedings were returned to the court-martial before it was dissolved. The proceedings of the court-martial and the action of Rear-Admiral Nichols seem to have been in exact accordance with the statutes and regulations of the navy, and to be fully justified by the principles of military law, as well as by the well-settled usage of the army and navy departments of the government.

An order is to be entered discharging the writ and remanding the prisoner to the custody of Captain S. L. Breese. Ordered accordingly.

[NOTE. This matter has since been heard by the supreme court of the United States, and the decision of Judge Nelson was sustained.]